(No. 60581.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSEPH L. LOCASCIO *et al.*, Appellees.

*Opinion filed May 24, 1985.*

Neil F. Hartigan Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Joan S. Cherry and Frank G. Zelezinski, Assistant State's Attorneys, of counsel), for the People.

Edward M. Genson, of Chicago, for appellee Joseph L. Locascio.

Alan D. Blumenthal, of Chicago, for appellee Stanley Kubas.

JUSTICE MILLER delivered the opinion of the court:

The defendants, Joseph L. Locascio and Stanley Kubas, were tried jointly in a bench trial in the circuit court of Cook County, convicted of official misconduct, and sentenced to 12 months' probation. The appellate court

reversed the convictions, holding that the defendants' guilt had not been proved beyond a reasonable doubt. (125 Ill. App. 3d 1162 (order under Supreme Court Rule 23 (87 Ill. 2d R. 23)).) We allowed the State's petition for leave to appeal (94 Ill. 2d R. 315(a)) and now reverse the appellate court's judgment.

The defendants were charged in a joint indictment with three counts of official misconduct (Ill. Rev. Stat. 1981, ch. 38, par. 33—3(b)) alleging their commission, in their capacity as police officers of the Cook County forest preserve district, of three different violations of the Wildlife Code (Ill. Rev. Stat. 1981, ch. 61, pars. 1.1 through 4.4); in three additional counts the defendants were charged with the predicate offenses. The indictment grew out of an occurrence of deer hunting in January 1982 in an area known as Dam 1 Woods East, a part of the forest preserve district. The illegal aspects of the hunting, as alleged in the indictment, were that it occurred out of season and at night and that the hunters, while armed, used a light operated from a vehicle. (See Ill. Rev. Stat. 1981, ch. 61, pars. 2.25, 2.26, 2.33(i).) The trial judge found the defendants guilty of the offenses charged in the indictment, entered judgment on the finding, and later sentenced each defendant to a 12-month period of probation.

Originally the appellate court affirmed the convictions, finding that the defendants' guilt had been proved beyond a reasonable doubt and also resolving in the State's favor several other contentions that the defendants raised. After granting the defendants' petition for rehearing, however, the appellate court reversed the convictions on grounds of reasonable doubt. Using the terminology that has been applied in cases when all the evidence of guilt is circumstantial, the court expressed its belief that the evidence here did not exclude every reasonable hypothesis of innocence.

The sole issue raised in this appeal is whether the defendants were proved guilty of the offenses beyond a reasonable doubt. The State's evidence tended to show that the hunting occurred in the Dam 1 Woods around 10 p.m. on January 27, 1982, and that the defendants were the only persons present at that time. The defendants did not dispute that deer hunting occurred there in January 1982 or that they were in that area on the night of January 27, 1982. Rather, the defendants offered the explanation that they went to that area on the night in question to test a new search light that the forest preserve district was considering using and that they were there only briefly and intermittently. From our review of the testimony, summarized below, we conclude that the convictions were supported by the evidence.

At trial Michael Quigley, who lived opposite Dam 1 Woods East, testified that while he was at home on January 27, 1982, he heard a gunshot at about 9:30 p.m. Fifteen minutes later he heard two more shots, and he then went outside and crossed over to the woods to investigate. He saw headlights near a shelter in the woods. The area was well lighted, and Quigley was about 100 feet from the scene. Two persons stood in the woods, with flashlights, and another person was in a light-colored vehicle, which Quigley believed was "a Bronco or Blazer type of vehicle." Its headlights were on, and a bright spotlight on the driver's side was directed into the woods. Quigley saw someone fire a gun, and he heard two or three gunshots. He could not see a rack of Mars lights on the roof of the vehicle or forest preserve emblems on its doors.

The next day Quigley's wife reported the gunshots to Raymond Schwarz, director of the River Trail Nature Center, and Quigley accompanied Schwarz on an inspection of Dam 1 Woods East. There Quigley saw what appeared to be one set of tire tracks in the snow and

places where animals had been killed.

Raymond Schwarz also testified. He said that on January 28, 1982, when he went through Dam 1 Woods with Quigley, the gate at the entrance on Dundee Road was locked and intact, and the lock did not appear to have been tampered with. Schwarz found what appeared to be two sets of tire tracks. The tracks made a loop about a mile in circumference, running from the front gate on Dundee Road and back again; at one point the tracks left the road and followed a bridle path. Along the route there were five to seven kill sites; in those places Schwarz found blood and chunks of hair, in addition to trails through the snow where animal carcasses had been dragged. One deer had been left behind.

Wayne Hanson, a police officer for the forest preserve district, also testified. On January 27, 1982, while conducting a routine patrol, he arrived at Dam 1 Woods East at 10:47 that night and found Kubas and Locascio there in one of the forest preserve district's vehicles, a Bronco. Hanson talked briefly to Kubas, who explained that he and the lieutenant had been testing a spotlight in the woods, and he demonstrated it for Hanson. The officers then left. Hanson heard over his radio a report of hunters in the area, but he did not respond to it, assuming that someone had noticed merely the searchlight. He did not see any other persons or vehicles there.

Hanson returned to headquarters, where he saw Kubas wiping out the back of his vehicle with paper towels. Later that shift, at about 12:15 a.m., Hanson went back to Dam 1 Woods East, taking the same truck that Kubas had used earlier. In the back Hanson saw pieces or bits of animal fur and red spots. In the woods Hanson found patches of blood in the snow and areas where it appeared that something had been dragged along the ground.

Defendant Stanley Kubas testified. Kubas denied that

he or Locascio engaged in any hunting on January 27, 1982, and also denied that he wiped out the back of his forest preserve truck that night. He was unable to say whether any tire tracks other than those made by his and Locascio's vehicles were present in the snow in the Dam 1 Woods. Kubas explained that on that date he was working the evening shift and was assigned a white Bronco vehicle, which was marked with forest preserve district emblems and had a rack of Mars lights across its top. Kubas testified that at 8 p.m. he drove to Dam 1 Woods East to meet Locascio, who had told him earlier to take along a portable searchlight that the district was considering using; a report on it was due the next day. Kubas drove to the Dundee Road entrance; Locascio arrived alone in a jeep-type vehicle. They drove to the back of the woods, where Locascio left his vehicle. They then drove together in the forest preserve truck back to the Dundee Road entrance, following the bridle path; along the way Locascio tested the search light. At about 8:30 they left the Dam 1 Woods and drove to Beck Lake, where they tested the searchlight again. They stayed there for an hour to an hour and a half.

Kubas estimated that he and Locascio returned to Dam 1 Woods East at about 10 or 10:30 that evening, entering as before through the locked gate on Dundee Road. He testified that he did not see any lights or hear any shots in the area at that time. He returned Locascio to his jeep, and they drove off separately. Before Kubas unlocked the front gate to leave, he saw Hanson and chatted with him briefly, exhibiting the searchlight. Kubas returned to headquarters, arriving about five minutes before Hanson. Kubas removed his belongings from the truck and then went home, having obtained Locascio's permission to leave work early.

Laboratory tests were conducted in March 1982 on matter taken from the back of the truck that Kubas had

used on the night in question. Apparently these tests disclosed the presence of both human and animal hair but not of blood. Additional testimony provided in the State's behalf by Officers Robert Nowak and Teresa Nowak of the forest preserve district showed that Locascio returned to his house at about 11:30 that night. He and perhaps as many as five other persons were in a blue or light gray Jeep Wagoneer belonging to his brother. Officer Robert Nowak testified that he had seen that vehicle parked in Dam 1 Woods earlier that night. Fortunato Rubino, a mechanic, testified in behalf of the defendants. Rubino explained that he and several of his family members were the persons whom Officer Teresa Nowak saw with Locascio that night. According to the mechanic, he helped start Locascio's stalled vehicle and then accompanied him to his house to pick up another car that needed some repairs.

The State's evidence, if accepted and believed, was sufficient proof of guilt. Quigley's testimony tended to show that hunting occurred in Dam 1 Woods East for some time before and after 10 p.m. on January 27, 1982. Quigley heard gunshots and saw someone fire a gun. He was unable to identify the hunters, however, and he did not notice Mars lights or forest preserve markings on the hunters' truck. That the hunting occurred before midnight was further confirmed by Officer Hanson, who returned to that area shortly after midnight and saw signs of it. This evidence tends to negate the defendants' theory that the hunting may have occurred after that time. The area where this occurred was closed that night, and the gate at the front entrance was locked throughout these times. To be sure, that was not the only way into the area. But only one or two sets of tire tracks were found there, and they went from the front gate and back again, apparently following the same route that defendant Kubas said he and the lieutenant

had taken. The kill sites were found at various points near those tracks. Whether Kubas cleaned out the back of his vehicle upon his return to headquarters that night was in dispute.

The evidence was sufficient to sustain the defendants' convictions. Determining the credibility of witnesses and the weight to be given to their testimony is a function reserved primarily for the trier of fact, who in this case was the trial judge, and a court of review will not normally substitute its own judgment in that regard. (See *People v. Molstad* (1984), 101 Ill. 2d 128; *People v. Kline* (1982), 92 Ill. 2d 490.) The defendants contend, however, that the guilty or innocent nature of the inferences that arise from circumstantial evidence is a question of law, not of fact, and therefore one that is as appropriately determined on review as it is in the first instance in the trial court. But determining the credibility of the witnesses and the weight to be given to the testimony of each of them—here, for example, the weight to assign to the explanation offered by the defendants for their presence in the woods—was a task essentially reserved to the trier of fact. Moreover, the trier of fact may disregard exculpatory accounts or other evidence that tends to support or be consistent with a defendant's innocence and rest its decision instead on the circumstantial evidence of guilt presented by the State. (See *People v. Williams* (1977), 66 Ill. 2d 478; *People v. Russell* (1959), 17 Ill. 2d 328; *People v. Malmenato* (1958), 14 Ill. 2d 52.) We conclude that the evidence here was sufficient to support the trial court's determination that the defendants were proved guilty beyond a reasonable doubt.

The State has requested a fee totaling $75 for its prosecution of this appeal and participation in oral argument in this court. (See Ill. Rev. Stat. 1981, ch. 53, par. 8.) Such fees are awarded upon a defendant's conviction. (See Ill. Rev. Stat. 1981, ch. 38, par. 180—3; Ill. Rev.

Stat. 1981, ch. 53, par. 8; *People v. Brown* (1983), 98 Ill. 2d 374.) Our examination of the appellate court's original decision in this case discloses that the defendants raised several issues in that court in addition to the question that was decided, reasonable doubt; those additional issues pertained to the sufficiency of the indictment and to sentencing. Because those questions were raised in the appellate court but not decided there, and have not been presented here, a remand to the appellate court is necessary. Therefore, we believe that the State's request for fees is premature.

For the reasons stated, the judgment of the appellate court is reversed, and the cause is remanded to that court for further proceedings.

*Judgment reversed;*
*cause remanded.*

JUSTICE WARD took no part in the consideration or decision of this case.