THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD VIANO, Defendant-Appellant.

Third District   No. 3—84—0600

Opinion filed August 30, 1985.—Modified on denial of rehearing January 17, 1986.

Louis R. Bertani, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

This appeal is from the circuit court of Will County which following a bench trial found the defendant, Richard Viano, guilty of the offenses of murder and concealing a homicidal death. The defendant was sentenced to a 20-year term of imprisonment for murder and a two-year term for concealing a homicidal death.

On November 10, 1982, Patrolman Kasky of the Crest Hill police department received a telephone call from the defendant, Richard Viano, who informed him that his wife, Jean Viano, was missing.

At the time he placed this call the defendant was 32 years of age and had no criminal record. He was born and raised in the city of Joliet where he graduated from a local parochial grade school and a Catholic high school. He continued his education, graduating with a degree in accounting from Lewis University, after which he worked for the Federal government, first for the Atomic Energy Commission and later with the Department of Energy. While so employed he returned to school and received a M.B.A. degree from DePaul University. In 1972 he met Gloria Jean Gregorash, whom he married in 1974. Three children were born of this marriage, Michelle in 1976, Christine in 1978, and Mark in 1981.

In 1982 the defendant was earning $40,000 per year. The marital home located in a very desirable area was unencumbered and the defendant and his wife had a modest stock portfolio and cash savings in the sum of $4,500. There was an insurance policy on the life of the wife Jean in the approximate sum of $8,000.

As the result of the missing person report received by the police department, criminal investigator Simenson at approximately 12:30 p.m. called at the Viano home. The defendant informed him that his wife Jean had left home the previous evening at about 7:30 p.m. in the company of three other friends for the purpose of attending a women's club meeting. The defendant expected his wife to return home sometime around midnight, but when his alarm went off at 6

o'clock the following morning he discovered that she had not returned. He first called his mother-in-law, then his sister-in-law, and next the police. The defendant upon further questioning stated that for several months "hang up" calls had been made to his home. He also told the investigator that a couple of months previously his wife received a call from a female Negro who verbally accosted her. The defendant also volunteered the statement that several months ago while he, the defendant, was on a business trip his wife came home and was frightened to find the garage door to their home was open.

At 3:15 p.m. of the same day the victim, Jean Viano, was found dead in the trunk of her automobile. The vehicle was discovered parked in the Bell Tower apartment complex, which is located in a predominantly black area. The victim's purse and jacket were also found in the automobile. No money was found in the victim's wallet.

November 10 was indeed a busy day. At 4:30 p.m. Officer Simenson had a further talk with the defendant. The defendant told the officer that on the preceding evening he had put $30 or $40 in his wife's purse so she would have spending money. He also related further information pertaining to the female Negro caller. The defendant claimed that he had received a phone call from such an individual, who informed him that she was aware of the fact that the defendant and his wife were having problems and that he, the defendant, should keep his wife away from her man. The defendant also told the officer that on the preceding evening he had filled his wife's car with gas, and, based on the amount of gas left, he estimated that the vehicle had been driven 30 or 40 miles.

While the investigation of the homicide of the victim continued, the defendant was aided in caring for his children by the victim's parents, who moved into his home. The doors to the home were barricaded by chairs, dead-bolt locks were installed and the defendant told a neighbor that he saw a stranger walking away from his house after he discovered an open door, a door which was supposed to be closed. A general atmosphere of fear and apprehension was created by the defendant as far as the security of his home was concerned.

During the investigation the police were informed by a neighbor of the defendant that there was a light on in the defendant's home at 12:30 a.m. on November 10, 1982. The police also discovered that the victim was seen in the garage of her home on November 9. The defendant was informed by the police on November 18, 1982, that they knew he had not been working overtime as he had told his wife because overtime was not available at his place of employment. Defendant was also informed that the police officers were aware of

the fact that defendant was having an affair with a woman named Pat Blair. In reply to an inquiry from the defendant, the police informed him that they did not believe him and his story.

Finally, on November 20, 1982, the defendant admitted that he had strangled his wife. He also admitted that he had an affair with Pat Blair that began in April 1982 and ended in September 1982. He told the officers that he last talked to Blair on November 9 when his wife was at the hospital meeting.

The defendant's version of his wife's death was that he went to bed on November 9 at approximately 9:30 p.m.; that the next thing he knew someone was on top of him in his bed; that the bedroom was dark and that he grabbed at the individual and both fell off the bed; that he ended up on top of the individual with his hands around the person's neck; that he held on to the individual for what "seemed to be an eternity"; that he held on until he could not feel anything more; that he then ran into the children's room to check on them, returned to his bedroom, turned on the lights and discovered that he had strangled his wife; that he checked the body for pulse and heartbeat and performed C.P.R. and then realized that his wife was dead; that he then cried for five or 10 minutes and put his wife's wedding rings on her hand; that he then carried the victim's body to her car, placed her in the trunk and proceeded to drive with no destination in mind; that he remembered getting out of the car and walking down Larkin Avenue; that he then went home and tried to sleep. The defendant stated that he did not call an ambulance or the police because he panicked.

The defendant told substantially the same story as above set forth when he testified at his trial. He attempted to explain his wife's actions in jumping on him by stating that she was a practical joker. He explained that once before she had attempted to frighten him by sneaking up on him while he was shoveling snow, that his wife was wearing a snowmobile suit and mask and that he reacted by almost striking her with a snow shovel. He also related an incident that, while on a camping trip, his wife put a rubber snake in his sleeping bag.

Further evidence adduced at trial will be set forth as the same is deemed pertinent to the disposition of the issues raised in this appeal.

The defendant first asserts that the trial court erred in denying his motion for a finding of not guilty on the charge of murder at the close of the State's case. The State argues that this issue is waived since the defendant after the denial of the motion subsequently introduced evidence. The defendant in support of his claim of error argues that he did not file a motion for directed verdict, as the

State claims, but instead filed a motion for a finding of not guilty on the charge of murder. The record discloses that at the conclusion of the State's case in chief the defendant filed a motion captioned "Motion for a Finding" and that the body of the motion was as follows:

"Now comes the defendant, Richard A. Viano, at the conclusion of the State's case and prays the court to enter a finding of not guilty on the charge of murder."

The foregoing motion should be characterized as a motion for a finding of not guilty on the charge of murder. By so characterizing it we distinguish it from a motion for directed verdict; however, such distinction is one without legal substance or significance as far as the question of waiver is concerned. The argument of the defendant against waiver is not well taken, since this case falls squarely within the ambit of *People v. Washington* (1962), 23 Ill. 2d 546, 179 N.E.2d 635, where it was determined that the presentation of evidence by a defendant in a bench trial after the denial of a motion "for a finding of not guilty" constitutes a waiver of the issue on appeal. See also *People ex rel. Kubala v. Woods* (1972), 52 Ill. 2d 48, 284 N.E.2d 286.

The defendant further argues that by limiting his motion to the charge of murder coupled with his request that the trial proceed on the lesser offenses of voluntary manslaughter, involuntary manslaughter and concealing a homicidal death, the waiver doctrine should not apply. We disagree. If the defendant failed to include the lesser offenses, such failure of inclusion does not toll the waiver doctrine. To hold otherwise would be illogical and lead to absurd ramifications which would play havoc with the orderly trial and appellate court process. The defendant has waived any issue concerning the propriety of the trial judge's ruling on his motion for a finding of not guilty.

The defendant next asserts that he was not proved guilty of murder beyond reasonable doubt. This assignment of error also presents a two-pronged argument. The first prong relates to the sufficiency of the evidence while the second pertains to the testimony of psychologists.

■ We first direct our attention to the defendant's argument regarding the sufficiency of evidence. Essentially, it is defendant's contention that his version of his wife's death given to the police was not inherently unbelievable.

In addressing this issue we initially note that a trier of fact is not compelled to accept a defendant's account of what happened at the time of the crime, but is permitted to consider the surrounding circumstances and the probability or improbability of the defendant's theory. *People v. Wiggins* (1957), 12 Ill.2 d 418, 147 N.E.2d 80; *People*

*v. Duncan* (1985), 133 Ill. App. 3d 489, 478 N.E.2d 1125.

In the case at bar the defendant was the only person who could testify as to what transpired at the time he strangled his wife, and he did so testify as to his version of the occurrence. The trier of fact had the benefit of this testimony as well as other testimony showing the circumstances surrounding the death of the victim. We will not restate the factual recitation which has heretofore been set forth; however, we will set forth some additional salient evidence which was adduced during the trial.

Although the defendant testified that his affair with Ms. Blair ended in September 1982, he admitted that he called her daily and in fact talked to her at least six times on the night of the killing. On cross-examination the defendant admitted that it was possible that he had been caught kissing Ms. Blair in a stairwell at his place of employment on November 2, 1982. He admitted that some of the alleged crank phone calls to his home were actually calls from Ms. Blair who would hang up if the defendant's wife answered the phone.

Several witnesses testified that the victim, Jean Viano, stated a short time before her death that she believed the defendant was trying to kill her. A neighbor lady of the victim testified that in October 1982, she was told by the victim that she had experienced two unusual events. The victim stated that on one occasion she was almost overcome by gas fumes after the defendant had worked on the muffler of her car, that on another occasion while at a gas station the defendant left her with the car running and could not be found, and that the car caught on fire and had to be extinguished.

■ The evidence in the instant case was sufficient to sustain the defendant's convictions. Determining the credibility of witnesses and the weight to be given their testimony is a function reserved primarily for the trier of fact, who in this case was the trial judge, and a court of review will not normally substitute its own judgment in that regard. The trier of fact may disregard exculpatory accounts or other evidence that tends to support or be consistent with defendant's innocence and rest its decision instead on the circumstantial evidence of guilt presented by the State. *People v. Locascio* (1985), 106 Ill. 2d 529, 478 N.E.2d 1358; *People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801; *People v. Russell* (1959), 17 Ill. 2d 328, 161 N.E.2d 309; *People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806.

■ As stated, the defendant presents a two-prong argument that he was not proved guilty beyond reasonable doubt. The second prong is his contention that the testimony of two psychologists called by the defendant establishes that he was telling the truth in his statement to

police officers that he strangled his wife in the mistaken belief that she was a burglar or an assaulting intruder.

Two eminently qualified psychologists, after examining the defendant, conducting clinical interviews and administering generally accepted tests that are used by clinical psychologists in the United States, reached independently of each other the same conclusion, namely, that the defendant was being truthful when he told the police that when he strangled his wife he thought he was being attacked by an intruder.

It is the contention of the defendant that the trier of fact cannot disregard the testimony of a witness that is uncontradicted by positive testimony, that is uncontradicted by circumstances, that is not inherently improbable and is not impeached. Defendant further argues that if the testimony of the psychologists was considered by the trier of fact then a finding of not guilty would have been mandated. In support of this argument defendant relies on the civil case of *Bucktown Partners v. Johnson* (1983), 119 Ill. App. 3d 346, 456 N.E.2d 703. We question the applicability of the *Bucktown* case to the instant case. In *Bucktown* the uncontradicted and unimpeached testimony was presented by a witness who was the defendant party to the suit. In *Bucktown*, the reviewing court made an exhaustive examination of not only Illinois supreme and appellate court cases but also cases from reviewing courts throughout our nation. After analyzing this myriad of cases, the reviewing court concluded that absent certain exceptions, unimpeached and uncontradicted testimony of a witness cannot be arbitrarily disregarded. Our examination of *Bucktown* discloses that nowhere in the opinion or in any of the cited cases therein is a discussion of the status of expert testimony regarding the determination of a fact. In the instant case the defendant dogmatically asserts that the trier of fact disregarded the testimony of the psychologists to the effect that he was telling the truth when he related to the police his version as to the death of his wife. The testimony of the experts was heard by the trial judge and admitted into evidence. The trial judge's decision makes it obvious that the expert testimony was not persuasive enough to result in a decision of not guilty. There is, however, no indication in the record that the trial judge disregarded the testimony of the experts.

In the instant case the testimony of the psychologists was determinative of the ultimate issue, namely, the veracity of the defendant. Such a determination is only within the province of the trier of fact, and the trier is not required to accept such testimony. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118,

273 N.E.2d 809; *People v. Slago* (1978), 58 Ill. App. 3d 1009, 374 N.E.2d 1270.

Our consideration of defendant's arguments concerning the quantum of proof dictates the conclusion that he was proved guilty of murder beyond a reasonable doubt.

■ Lastly, the defendant argues that he was not proved guilty beyond reasonable doubt of the offense of concealing a homicidal death.

This assertion is grounded upon his statement to the police that he "went blank" after he killed his wife and that he "panicked." It is defendant's reasoning that since one of the psychologists testified that he (defendant) did not know that he had killed his wife nor did he know that he had committed a crime in killing his wife, a conviction for concealing a homicidal death will not stand. It is defendant's logic that he could not be guilty of concealing a homicidal death if he did not know that the death was a homicide. We quarrel not with defendant's logic if it was grounded upon a sound premise, which it is not. We have heretofore set forth that the trier of fact is not required to accept the opinion of an expert in determining the ultimate issue as to whether an accused is guilty or innocent of murder. This rule is equally applicable in determining the guilt or innocence of a related offense, in this instance concealing a homicidal death. The trier of fact discounted the testimony of the psychologist that the defendant did not know that he had committed a homicide. The abundant remaining evidence supported the conclusion that the defendant committed the offense of concealing a homicidal death.

■ The trial court imposed a sentence of two years on the defendant for the offense of concealing a homicidal death and directed that such sentence was to run consecutively with the sentence imposed for murder. Subsequent to the filing of this opinion, the defendant filed a pleading, the effect of which constituted a petition for rehearing, in which he claimed that the trial court failed to make the findings requisite for its determination that the two-year sentence for concealment of a homicidal death should be served consecutively. Pursuant to request by this court, the State failed a response to the pleadings of the defendant. It is the defendant's contention that before imposing consecutive terms of imprisonment the trial court is required to make findings that such sentence is necessary to protect the public. With this contention we agree. (See *People v. Merz* (1984), 122 Ill. App. 3d 972, 461 N.E.2d 1380; *People v. Gaston* (1980), 88 Ill. App. 3d 314, 410 N.E.2d 531; and *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.) In the latter cited case, our supreme court rec-

ognized and adhered to the rule that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public and held that while an express declaration of such finding would be a better practice, a consecutive sentence may be proper where the record showed that a defendant had several felony convictions.

In the instant case the defendant had no previous convictions and the trial court at the sentencing hearing agreed with defendant's counsel that "the character and attitudes of the defendant indicate that he is unlikely to commit another crime." The record fails to support the trial court's determination that the two-year sentence for concealment of a homicidal death should be served consecutively to the sentence imposed for murder. Accordingly, this court modifies the sentence of two years for concealment of a homicidal death by ordering that the same shall be served concurrently with the 20-year sentence imposed for murder.

For the reasons set forth, the judgments of conviction by the circuit court of Will County for the offenses of murder and concealing of a homicidal death and the sentences imposed thereon as modified in this opinion are affirmed.

Affirmed as modified.

STOUDER and WOMBACHER, JJ., concur.