THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRANCE S. BOONE, Defendant-Appellant.

Fifth District   No. 5—85—0653

Opinion filed February 4, 1987.—Rehearing denied March 9, 1987.

Randy E. Blue and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Terrance S. Boone, was convicted of murder after a jury trial in the circuit court of St. Clair County and sentenced to 20 years' imprisonment. On appeal he contends the State failed to prove him guilty of murder beyond a reasonable doubt and that the jury was improperly instructed. We affirm.

The body of Cortez Caster was found on a road in St. Clair County, Illinois, at approximately 8:30 p.m. on March 10, 1985. An autopsy revealed he died from a gunshot wound to the left side of his head.

The State's primary witness was Dwayne Howard. He testified that he went to the victim's home between 3 and 4 p.m. on March 10, 1985. From there Howard and the victim drove to Howard's home in Jennings, Missouri. Defendant was at the house when Howard and Caster arrived. While there, Dwayne Howard's younger brother, Derrick, told Dwayne that defendant had a gun. Subsequently, Dwayne Howard, Caster, and defendant left in Howard's car and drove to a house described only as being on Vandeventer, where Caster obtained a package of marijuana. From there they drove to the home of Lynn Tate, defendant's girlfriend. According to Howard, the three then went to a Wendy's restaurant in East St. Louis where Caster worked. Caster and Howard went inside first, and defendant followed sometime later. Their next stop was a lounge where Howard and Caster went inside while defendant stayed in the car. Howard and Caster were inside the bar for approximately 10 minutes. Then Caster and Howard got back into the car, with Howard in the driver's seat and Caster in the front passenger seat, while defendant was alone in the rear seat. Howard testified that while he was driving after leaving the

bar, defendant and Caster began arguing because Caster and Howard wanted to stay at the bar while defendant wanted to leave. Caster and defendant exchanged words and then began striking each other with open hands and fists, according to Howard. This physical contact lasted about three or four minutes. Howard testified that after his two passengers had stopped arguing, "Cortez looked at me and I looked at Cortez and that's when Terry held the gun point—came out of gunpoint and shot Cortez in the head." On cross-examination, Howard stated he did not see defendant when the shot was fired. Howard stated he was slowing down the car for a stoplight when the shot was fired. He further testified that after defendant shot Caster, defendant ordered him at gunpoint to open the passenger door and push Caster out of the car. Defendant climbed into the front seat to help push Caster out of the vehicle. Howard stated that defendant told him, "Don't tell anybody or I will kill you." Howard also saw defendant throw a gun out of the window of the car. He saw defendant the next day, and defendant asked if Howard remembered what had happened. Howard answered affirmatively, and defendant then made a reference to how much he had to drink. Howard testified that during their excursion that afternoon and evening, all three men had been smoking marijuana and drinking alcoholic beverages. Howard also testified he did not have a gun in his car that day and did not know where defendant had obtained the gun used in the shooting. In addition to this testimony, Howard admitted to having been convicted in 1980 in Missouri of being an accessory to robbery.

Dwayne Howard's 15-year-old brother, Derrick, testified that defendant lives in the same neighborhood as the Howard family and that defendant came to the Howard home often. Derrick stated that on March 10, 1985, defendant, Caster, and Dwayne Howard were at the Howard home at approximately 3 p.m. and again at 7 p.m. Derrick testified that during the second visit, defendant showed him a small gun which defendant had tucked into the waistband of his pants.

The State also presented as a witness Dr. Raj Nanduri, who conducted the autopsy upon the victim. Dr. Nanduri testified Caster had died of a gunshot wound to the left side of the head and that the bullet traveled from the left side of the head to the right side in an almost horizontal path.

Defendant testified in his own behalf that he saw Caster and Dwayne Howard at the home of Lennie Tate, defendant's girlfriend, at approximately noon on March 10, 1985. He left with them to go to a liquor store where defendant bought alcoholic beverages. From

there they went to the home of Steve Norman, a cousin of defendant's. Defendant testified the three then made a stop to get some "weed" and then went to another liquor store. Next they returned to defendant's cousin's house, where they parked in order to smoke marijuana and drink. From there they went to Howard's house. Defendant denied showing Derrick Howard a gun while at the Howard home, but stated he did show him a half pint of "Jack Daniels" which he had in his waistband. Defendant, Caster, and Dwayne Howard then left to go to East St. Louis. Defendant testified they stopped at a "hamburger place," then went to a lounge. Caster went into the lounge for a "couple of minutes" and when he returned, defendant asked Howard to take him, defendant, home because he was "pretty drunk." Caster tried to convince Howard to stay at the lounge. Defendant responded by saying, "M.F. that lounge." Caster then said, "M.F. you" and swung at him, according to defendant. Defendant then slapped back at Caster and a struggle ensued. Defendant testified that at one point when the car was slowing down, Caster fell toward the dashboard. As the vehicle began picking up speed again, a gun slid from under the front seat and hit defendant's shoe. He picked up the gun because, "I felt if he see [sic] it, he would back off me." However, when Caster saw the gun, Caster "grabbed it and it went off," according to defendant. Defendant testified that Caster was "going to come at me." After the gun went off, Caster fell against the passenger door, and defendant asked Howard what they were going to do. Defendant stated that Howard reached over and opened the passenger door. Defendant did not remember whether he had told Howard to open the door, but denied threatening Howard at gunpoint. Howard asked for defendant's help in removing Caster from the car, and defendant testified he reached around the seat and pulled Caster out of the door as Howard pushed. Defendant admits that he then threw the gun, which he had said had fallen onto the front seat by this time, out of the window of the car. He then climbed into the front seat and Howard drove away.

Defendant denied ever pointing the gun at Caster or firing the weapon. He testified he did not know whose hand was on the trigger when it went off. Defendant also denied ever pointing the gun at Howard or threatening him. He testified he had known both Caster and Howard for approximately 11 years.

Defendant further testified that in his first statement to the police, he had blamed the shooting on Dwayne Howard. At trial, defendant admitted that he lied in this first statement.

The jury was instructed on murder, voluntary manslaughter, and

involuntary manslaughter. It returned a verdict of guilty of murder and was silent regarding the manslaughter charges. Defendant on appeal claims the evidence supports a guilty verdict on involuntary manslaughter, but not one for murder.

██ █ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We conclude the evidence here is not so improbable or unsatisfactory so as to create a reasonable doubt of defendant's guilt.

██ Defendant argues the State failed to prove the requisite mental state to convict him of murder. To convict a defendant of murder, section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) requires the State to prove he intended to kill or do great bodily harm or knew that his acts would cause death or a strong probability of death or great bodily harm. The mental state which must be proved in order to support a murder conviction can be inferred from the character of the assault and the attendant circumstances. (*People v. Smith* (1977), 46 Ill. App. 3d 474, 479, 361 N.E.2d 69, 72.) While the State's primary witness, Dwayne Howard, did not actually see defendant shoot the victim, this does not lead to the conclusion that we must accept defendant's version of what actually happened. When a defendant's "testimony allegedly constitutes the only evidence of what actually took place, the trier of fact is not obligated to accept all, or even any part, of his statements but may consider the reasonableness of the defense offered, assess its probabilities, if any, and reject that evidence which it finds contradictory, unlikely, or improbable in light of other facts before it." (*People v. Eliason* (1983), 117 Ill. App. 3d 683, 695-96, 453 N.E.2d 908, 915.) "The trier of fact may disregard exculpatory accounts or other evidence that tends to support or be consistent with defendant's innocence and rest its decision instead on the circumstantial evidence of guilt presented by the State." *People v. Viano* (1985), 139 Ill. App. 3d 560, 566, 487 N.E.2d 623, 628.

██ The circumstances here support a finding that defendant intended to kill or do great bodily harm or knew that his acts would

cause death or a strong probability of death or great bodily harm. The evidence showed that defendant and the victim had been arguing and striking each other. The argument stopped. Later, a gunshot was heard, and the victim, who had been facing the driver of the car, was struck in the left side of the head. The bullet traveled an almost horizontal path through the victim's head. Defendant admitted he was "pretty drunk" at the time of the shooting. Although defendant's testimony was that the gun accidentally discharged during the struggle, this testimony was inconsistent with the State's evidence that the struggle had ended at the time Caster was shot. There was evidence defendant had a gun in his waistband earlier in the day. Defendant's credibility was brought into question by his testimony that a gun just happened to slide from under the seat during the argument. This testimony was inconsistent with the State's evidence. Furthermore, defendant admitted having lied in his first statement to police. This further impugned his credibility. Defendant's story thus could be rejected by the jury, leaving circumstantial evidence that defendant had the requisite mental state to support a conviction for murder. We conclude the evidence was not so unsatisfactory or improbable as to create a reasonable doubt of defendant's guilt.

■ Defendant next contends the jury was improperly instructed. He argues that the issues instruction for murder should have included the proposition that the State had the burden of negating the elements which would have led to a verdict of voluntary manslaughter. Defendant claims that there was evidence that he either acted out of intense passion resulting from serious provocation or that he had an unreasonable belief that circumstances existed which would have justified the killing as self-defense. These two sets of circumstances, which both amount to voluntary manslaughter, are found in section 9–2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9–2). This section states in pertinent part:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) The individual killed ***.
***
Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed,

would justify or exonerate the killing under the principles stated in Article 7 of this Code [ch. 38, par. 7—1], but his belief is unreasonable." Ill. Rev. Stat. 1985, ch. 38, par. 9—2.

Section 7—1 states:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1985, ch. 38, par. 7—1.

Defendant relies upon *People v. Bolden* (1985), 132 Ill. App. 3d 1047, 1058, 477 N.E.2d 1380, 1387, which held that "when the defendant in a murder trial introduces some evidence of intense passion or of unreasonable belief, it is to be treated as a partial affirmative defense and the burden is on the State to negate the elements which would lead to a verdict of voluntary manslaughter." The court in *Bolden* then suggested that the existing jury instructions are not adequate to address this situation.

We first acknowledge the State's contention that defendant has waived this issue by failing to offer an instruction consistent with this argument at trial and by failing to include this issue in his post-trial motion. It has been held that this precise issue can be treated as waived and that it does not automatically rise to the level of plain error. (See *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872; *People v. Williams* (1985), 134 Ill. App. 3d 334, 480 N.E.2d 205.) We find the issue here to have been waived and can find no plain error. Any error here does not warrant reversal because of the lack of evidence to support the intense-passion and unreasonable-belief theories.

Defendant's theory advanced at trial was that the gun discharged accidentally. He testified he never pointed the gun at the victim and did not know whose hand was on the trigger when the gun discharged. Similar circumstances were present in *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448, where the defendant testified that a weapon discharged accidentally as he was trying to wrestle control of it from his wife. The court there held:

"Defendant's account at trial of the various incidents of provocation and threats which preceded the killing of the victim

provides no basis for an instruction on voluntary manslaughter or self-defense where defendant testified that the shooting itself was accidental. The defense of accident is not compatible with the 'sudden and intense passion resulting from serious provocation' necessary under subsection 9—2(a) of the statute defining voluntary manslaughter. In reference to that subsection, our supreme court has observed that '[t]he offense of voluntary manslaughter has commonly been described as "[a]n intentional homicide committed in a sudden rage of passion engendered by adequate provocation, and not the result of malice conceived before the provocation ***" [citation].' (*People v. Leonard* (1980), 83 Ill. 2d 411, 420 [45 Ill. Dec. 353, 415 N.E.2d 358].) And subsection 9—2(b) of the statute applies to one who *intentionally* or *knowingly* kills another under an unreasonable belief that the killing is necessary in order to defend himself. If the belief is reasonable, then the defendant is exonerated from any criminal liability under the justifiable-use-of-force provisions of section 7—1 of the Criminal Code. It follows, therefore, that an instruction on voluntary manslaughter or justifiable use of force cannot be based solely upon the defendant's testimony where the defendant himself states that the killing was accidental.

By its very nature self-defense, whether reasonable or not, relates to the intentional or knowing use of force and not to an accidental shooting. If defendant acted in what he believed to be self-defense, he must have fired the weapon intentionally or knowingly. If the gun was accidentally discharged, all questions of self-defense are out of the case." *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 893, 420 N.E.2d 461, 467.

■ Defendant's theory at trial in the present case was that he did not intentionally or knowingly kill the victim, but rather that the gun discharged accidentally, causing the death. Following the holding in *Purrazzo*, defendant was not entitled to instructions on justifiable use of force or voluntary manslaughter (see also *People v. Holloway* (1985), 131 Ill. App. 3d 290, 311, 475 N.E.2d 915, 931) and consequently was not entitled to an instruction stating that the burden was on the State to prove the killing was *not* voluntary manslaughter. That defendant's defense was totally inconsistent with the instructions which he claims should have been given is highlighted by defense counsel's closing argument in which counsel stated that the jury's verdict should be either guilty of *involuntary* manslaughter or not guilty of all charges. Nor is there any evidence in the State's case

to support instructions on justifiable use of force or voluntary manslaughter. The struggle between defendant and the victim had ended prior to the time the victim was shot. There is no evidence in the State's case that the victim was going to attack defendant after the struggle had ended. Defendant was in the backseat of a car and the victim was in the front seat. There was no testimony in the State's case regarding statements made by defendant which might have shown his state of mind.

Thus, due to the lack of evidence of intense passion or unreasonable belief, and due to defendant's failure to offer the desired instruction at trial, defendant was not entitled to an instruction placing the burden on the State to negate the elements of voluntary manslaughter.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS, P.J., and WELCH, J., concur.