THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
LARRY LEE, Defendant-Appellee.

First District (5th Division)   No. 85—3001

Opinion filed July 15, 1988.

Randolph Stone, Public Defender, of Chicago (Irene D. Cavanaugh and
Kendall Hill, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Laura A. Gray, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant Larry Lee was convicted under the Criminal Code of 1961 of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1)), aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(5)), and armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)). He received concurrent sentences of 14 years in prison for aggravated criminal sexual assault and 10 years each for aggravated kidnapping and armed robbery. He appeals and raises the following issues: (1) whether the trial court erred in denying his motion for directed verdict at the close of the State's case; (2) whether the in-court identification of him was tainted due to suggestive pretrial identification procedures; (3) whether the complainant's testimony concerning the time she was raped raises a reasonable doubt as to his guilt; and (4) whether testimony of a conversation was erroneously admitted into evidence.

On September 15, 1984, the complainant, J.B., testified she arrived at Stanley Jones' apartment building and stepped inside a well-lighted vestibule area that contained an intercom system. Unable to remember Jones' code number, J.B. stepped outside and saw defendant, Larry Lee, standing at another entrance. J.B. yelled out and asked defendant whether the other entrance was open. Defendant said he knew someone in another building of the same apartment complex who could let J.B. into the building. They walked to the vestibule of the other building and defendant dialed numbers on the intercom system, but was unable to get a response. J.B. testified it was approximately 5:45 a.m. at this time.

J.B. decided that defendant could not get inside the building and walked back to Jones' building. Defendant followed her into the vestibule and dialed another number but no one responded. She testified she was able to see defendant's face and the lights were on in the vestibule. She remembered another friend in the building and began to dial his number. As she was dialing, defendant put a knife to her throat and said, "Don't scream and don't move or I'll kill you." He led her down the street approximately two blocks to an abandoned warehouse holding the knife at her side. On the way, he told her to give him her money and jewelry and she gave him $2, two gold chains, a gold bracelet, a watch, and a ring.

J.B. testified that as they entered the warehouse, "the sun was at its peak" and shone through holes in the roof and the entrance-way. When defendant removed his shirt, she noticed that he had a dollar sign tattoo on his chest. While in the warehouse, defendant forced her to have vaginal, oral and anal intercourse with him. Defendant ejaculated during vaginal intercourse. J.B. testified they were in the warehouse for approximately 30 to 45 minutes. After-ward, defendant took her phone number to make sure she did not tell anyone what happened, and told her she should "be his woman because he would treat her right."

They left the warehouse and as they approached Jones' apart-ment building, defendant told her she could leave. She ran off and told a man, who was sitting in a car, what happened to her. The man drove her to the back of Jones' building, where she was able to enter because residents were leaving for work.

Stanley Jones testified that it was between 7 a.m. and 7:15 a.m. when J.B. entered his apartment crying and in a hysterical state. He noticed her clothes were "rumpled, her shoes and pants were scuffed, and her shirt was torn." At first, she told him she was robbed by a young black man. Jones immediately left the apartment in an attempt to find the robber. Unable to find the person, Jones re-turned in 5 to 10 minutes, and J.B. then told him she was also raped. She described the attacker and Jones left the apartment again to call the police.

At trial, the parties stipulated that Officer H. Johnson would tes-tify he arrived at Jones' apartment at 7:40 a.m. and took J.B. to the hospital. The parties also stipulated that Rhonda Doyle, an expert in forensic microanalysis, would testify vaginal specimens taken from J.B. revealed the presence of sperm.

On September 17, 1984, police officers visited J.B. at home, told her they had a suspect, and showed her three photographs. Two of the photographs were of the defendant which appeared to have been taken at different times. The record does not reveal whether she identified defendant from the photographs at this time.

On September 24, 1984, police officers showed J.B. a stack of eight photographs of eight different men. One of the photographs was of defendant. She identified defendant as the man who raped her.

On November 14, 1984, after J.B. identified defendant in a police lineup, he was asked to open his shirt, thereby revealing a dollar sign tattooed on his chest.

At the close of the State's case, defendant moved for directed

verdict on each of the 42 counts of the indictment. The court denied the motion as to three counts of criminal sexual assault, 14 counts of aggravated criminal sexual assault, two counts of kidnapping, four counts of aggravated kidnapping, and one count of armed robbery. Defendant also moved to suppress J.B.'s identification of him, which was denied. Defendant then presented evidence on his own behalf in his case in chief.

Defendant testified that while he and J.B. were attempting to get into the apartment building, he asked her if she wanted to smoke marijuana. They smoked three marijuana cigarettes in the abandoned warehouse and had vaginal intercourse with her consent. He denied having any other form of sexual relations with her. He stated they were in the warehouse for one hour. He denied that he had a knife and that he threatened J.B.

Defendant's motion for a new trial following his convictions of aggravated criminal sexual assault, aggravated kidnapping, and armed robbery was denied and this appeal followed.

OPINION

We affirm for the following reasons.

■ First, defendant argues that the denial of his motion for directed verdict at the close of the State's case was in error. We find, however, that defendant waived this issue on appeal when he presented evidence after the denial of his motion for directed verdict at the close of the State's case. See *People v. Viano* (1985), 139 Ill. App. 3d 560, 487 N.E.2d 623.

■ Second, defendant argues that J.B.'s in-court identification was unreliable due to suggestive pretrial identification procedures. We are not persuaded by this argument because defendant relied on the defense of consent at trial. At the close of the State's case, defendant's motion to suppress the identification was denied. Then in his case in chief, defendant testified that J.B. voluntarily engaged in sexual intercourse with him. Therefore, we find defendant's claim concerning identification to be inconsistent with his defense at trial.

Third, defendant argues J.B.'s testimony was false as to the time she was raped and, therefore, he was not proven guilty beyond a reasonable doubt. Defendant focuses his attention on J.B.'s testimony concerning the time the sun was rising on the morning of the attack. J.B. testified that she thought it was approximately 5:45 a.m. when she and defendant were in the vestibule of the apartment complex and that "the sun was at its peak" when they were walking to the

warehouse. J.B. testified that they were in the warehouse for 30 to 45 minutes and that she arrived at Jones' apartment between 7 a.m. and 7:15 a.m. Defendant argues that the sun rose at 6:30 a.m. on that morning and, therefore, J.B.'s testimony is false because the sun could not have been shining as they were walking to the warehouse.

■ It is well established that it is the function of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Williams* (1985), 137 Ill. App. 3d 736, 484 N.E.2d 1191.) A reviewing court will not reverse a criminal conviction unless the evidence is so improbable or contrary to the verdict as to raise a reasonable doubt as to defendant's guilt. *People v. Helton* (1987), 153 Ill. App. 3d 726, 506 N.E.2d 307.

■ In the present case we find that J.B.'s testimony does not raise a reasonable doubt of defendant's guilt. Although there is an apparent inconsistency in J.B.'s testimony concerning the time certain events occurred, the trier of fact found J.B.'s testimony credible. Defendant has not raised any evidence that renders her testimony improbable, and, therefore, we will not disturb the verdict on appeal. See *People v. Helton* (1987), 153 Ill. App. 3d 726, 506 N.E.2d 307.

Fourth, defendant argues that a conversation between J.B. and Stanley Jones was erroneously admitted into evidence. On questioning by the State, Jones testified that when J.B. told him she was raped, she gave him a description of the attacker. Defendant's objection to the testimony of the conversation was overruled. No further details of the conversation concerning the description were pursued by the State. On cross-examination, however, defendant elicited the specifics of what J.B. said the attacker was wearing. Defendant now complains that Jones' testimony of the description of the attacker was inadmissible hearsay and should have been stricken. See *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.

■ Where defendant objects to the admission of testimony on direct examination but then questions the witness on cross-examination concerning the allegedly inadmissible testimony, any error caused thereby is waived for purposes of appeal. (*People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387.) The State stopped its questioning of Jones once he testified that J.B. gave him a description of the attacker. It was defendant who elicited the description from Jones that defendant now claims should have been stricken. We find defendant's position untenable because he elicited the testimony he now claims is inadmissible, and therefore, defendant has waived any argument concerning the admission of the description.

Lastly, we grant the State's request to assess the sum of $50 against defendant as costs for this appeal. Ill. Rev. Stat. 1985, ch. 53, par. 8(a).

Judgment affirmed.

SULLIVAN and MURRAY, JJ., concur.