THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE NICHOLLS, Defendant-Appellant.

First District (4th Division)   No. 1—90—2422

Opinion filed September 30, 1992.

Martin Carlson, of State Appellate Defender's Office, and Thomas J. Donovan and John T. Gabrielides, both of Laff, Whitesel, Conte & Saret, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Brian Clauss, and Annette Milleville, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Wayne Nicholls, was found guilty of attempted armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). Defendant's motion for a new trial was denied. The trial judge sentenced defendant to nine years in the Illinois Department of Corrections.

On November 3, 1989, Billy Nicholls drove a blue Ford to a location in Markham, Illinois, known for drug deals. An unidentified person sat in the passenger seat. Someone in Billy's car shot Xavier Chambers (victim), a drug dealer, in the back. Chambers said the name of the person who shot him was "George." However, defendant, Wayne Nicholls, was found guilty of attempted armed robbery and armed violence. Defendant is the brother of Billy's father, Clarence Nicholls, Sr., and he is Billy's uncle.

The passenger in Billy's car beckoned to Chambers. Chambers approached the blue Ford and was directed to come to the driver's side. Chambers testified that after a short conversation, the passenger said, "This is a stick-up." When Chambers attempted to escape, he was shot in the back with a gun owned by Clarence Nicholls. Chambers testified that he was shot by the passenger. Nevertheless, at trial, he could not identify defendant as the person who shot him.

When Officer John McLaughlin arrived on the scene, he was informed by Chambers that he had heard the name "George" used to

address the person who shot him. Of the two people in the blue Ford, Chambers could only identify the driver, Billy Nicholls. Yet, he specifically described the passenger as a white male who was slightly overweight, wearing a mustache. He testified that the passenger's hair was unkempt, balding on top and appeared to be dark in color.

Clarence Nicholls testified that on November 6, 1989, he discovered that his .38 special was missing. He testified that defendant was familiar with that particular gun and knew where Clarence kept his guns. Clarence also testified that his relationship with defendant had become strained since defendant's involvement with drugs.

Defendant testified that on November 3, 1989, he and Billy were drinking at a bar called the "Worst Pub" located at 139th Street and Western Avenue between 3:30 and 7:30 p.m. Defendant did not leave the bar during that time. However, for 1½ hours Billy was not in the company of defendant. Defendant spent that time sitting at a table chatting with some of the other patrons of the bar. When Billy returned to the bar, defendant did not question him as to his whereabouts for the past 1½ hours.

Defendant further testified that he had not seen or handled his brother's guns and that he did not use cocaine. Clarence Nicholls testified to the contrary with respect to both the handling of guns and the use of cocaine. Defendant testified that he did not have a mustache on the day in question and that his hair was longer on the day in question than it was at trial. In police photographs taken of defendant on October 27, 1989, he did have a mustache. The parties stipulated that these photographs were taken from the arrest file of defendant at the Posen police department. Defendant also testified that he had lost weight since November 3, 1989.

Billy Nicholls also testified as to the whereabouts of defendant on Friday, November 3, 1989. Sometime after 3 p.m., at the direction of defendant, Billy drove to a bar located at 139th and Western Avenue. While at the bar, Billy and defendant shared a pitcher of beer. Billy left his seat to call his girl friend. When he returned, defendant asked Billy to take him to Robbins to buy some drugs. Billy refused and also refused to allow defendant to use his car. Defendant then suggested that they go to Markham. Billy agreed and drove defendant to a neighborhood called Bel Air, located at 155th and Kedzie. Defendant gave Billy directions as to where to turn.

Billy drove to a location where two men in a brown car motioned him to follow them. When the cars stopped, the driver of the brown car approached Billy's car, going toward the passenger side. Since the

passenger side window was broken, he had to approach on Billy's (the driver) side.

Billy further testified as to the conversation between defendant and the driver of the brown car. Defendant said, "Did you get anything[?]" The driver responded, "What do you need[?]" and produced a small container from his pocket. At that point, defendant, armed with a gun, lunged across the seat, held the gun out the driver's side window and told the man to give him everything he had. The driver turned to run away, but was shot by defendant. Billy also testified that defendant shot the driver of the brown car from a distance of about two feet. After the incident, defendant said to Billy, "Go." Billy left promptly. He dropped off defendant at another bar. This one was located at 147th and Kedzie.

The testimony of Billy Nicholls was questioned by the defense for several reasons. First, the charges against him were dropped in exchange for his giving a truthful statement. Second, at the time of his testimony, he was on reporting supervision for the charge of battery of a police officer. Then, when Billy was charged, he gave the police three different statements. Only the last statement implicated defendant. Officer McLaughlin was told that Billy frequented the area where the shooting took place. Billy denied this but did admit knowing of the area. It was also clear that Billy was familiar with the location of the gun used in the shooting as well as with the gun itself. Finally, Chambers identified his assailant as someone named "George."

Defendant also finds it questionable that Chambers was never shown photographs taken of defendant at the Cook County jail on November 8, 1989. In that photograph (People's exhibit No. 8), defendant had no mustache and his hair was shorter than in the photograph taken on October 27, 1989. However, defendant testified that he could not remember whether or not he had his hair cut between November 3 and November 6, 1989. Further, the record states that defendant testified that he periodically shaved his mustache and then let it grow back.

On appeal, defendant contends that (1) he was not proved guilty beyond a reasonable doubt, and (2) the trial court erred by applying the doctrine of completeness and admitting the out-of-court statement of a State's witness.

We affirm.

The first issue on appeal is whether defendant was properly found guilty beyond a reasonable doubt. When reviewing the sufficiency of the evidence presented at trial, the inquiry on appeal is whether, " 'after viewing the evidence in the light most favorable to the prose-

*cution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'* " (Emphasis in original.) *People v. Young* (1989), 128 Ill. 2d 1, 49, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

Defendant argues that Billy's uncorroborated testimony is to be viewed with caution and skepticism. He correctly notes that Billy's status as an accomplice should be viewed as a weakness against his testimony. However, as stated by the Illinois Supreme Court, the important role of scrutinizing accomplice testimony is given to the jury. The court's discussion of this type of testimony is as follows:

"The testimony of an accomplice witness 'has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice towards the accused, fear, threats, promises or hopes of leniency, or benefits from the prosecution.' [Citation.] Because it is attended with serious infirmities, accomplice testimony 'should therefore be accepted only with the utmost caution and suspicion and have the absolute conviction of its truth.' [Citation.] While we recognize that such testimony is subject to careful scrutiny, the testimony of an accomplice witness, whether corroborated or uncorroborated, is sufficient to sustain a criminal conviction *if it convinces the jury of the defendant's guilt beyond a reasonable doubt.*" (Emphasis in original.) *People v. Young* (1989), 128 Ill. 2d 1, 47-48.

The basis of defendant's argument for reversal is found in *People v. Wilson* (1977), 66 Ill. 2d 346. In that case, defendant's conviction for armed robbery was affirmed by the appellate court. At issue for the Illinois Supreme Court was whether the testimony by an accomplice was sufficient to sustain a verdict of guilty beyond a reasonable doubt.

The court reversed for two reasons. First, it did not find the testimony of the accomplice to be truthful. This is because he was incarcerated pending the results of other indictments, had admitted being the catalyst behind the act in question, and was promised immunity. Second, on three separate occasions, the victim had identified another man in a police lineup. Yet, despite its reversal in this case, the law on accomplice testimony did not change. "Our supreme court has stated that 'the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if such testimony convinces the jury of defendant's guilt beyond a reasonable doubt.' " *People v. Byrd* (1986),

139 Ill. App. 3d 859, 865, quoting *People v. Newell* (1984), 103 Ill. 2d 465, 469-70, 469 N.E.2d 1375, 1377.

██ In the case at bar, Billy was not incarcerated at the time of trial. He was on reporting supervision for an unrelated incident. Though present at the time of the shooting, there is no evidence that he had prior knowledge that the crime was to occur. With respect to victim identification, the defense emphasizes Chambers' testimony that his assailant was called "George." However, Chambers testified that it was the passenger who shot him. He also described the passenger as a chubby white male with a mustache and a balding head of "wild" hair which appeared to be darker than blonde. This description was similar to pictures taken of defendant on October 27, 1989. These pictures were People's exhibits Nos. 6 and 7. It was stipulated by the parties that they were taken from the arrest file of defendant at the Posen police department. Despite more recent photographs being available, defendant's testimony indicated some question as to whether he might have changed his appearance between the time of the incident and the time that the most recent photographs were taken. For example, defendant could not remember whether or not he had his hair cut between November 3 and November 6. He was photographed at the Cook County jail on November 8, 1989.

Despite the fact that Billy was present and involved in the shooting of Chambers, the jury still believed his testimony. Billy's uncorroborated testimony as an accomplice is to be evaluated by the jury. The evaluation of accomplice testimony has been described as follows:

> "Even though the court may view uncorroborated testimony of an accomplice with suspicion and scrutinize it carefully on review, the fact that a witness is an accomplice or expects leniency does not destroy his credibility, but rather, affects the weight to be given his testimony and is, therefore, a matter for the trier of fact." *People v. Beals* (1988), 165 Ill. App. 3d 955, 960.

The jury heard all of the evidence and found the testimony of Billy to be the more credible. In reviewing the evidence in a light most favorable to the prosecution (*People v. Young* (1989), 128 Ill. 2d 1, 48-49), we affirm the jury determination of defendant's guilt beyond a reasonable doubt.

The second issue on appeal is whether the trial court erred by improperly applying the doctrine of completeness and admitting the out-of-court statement of Billy, a witness for the State. His out-of-court statement was made to Officer Wright when Billy was being held in an investigating room in the Markham Police Station. The statement

was recounted in a colloquy between the prosecutor and Billy. It proceeded as follows:

"Q. When you say, 'Told them exactly what happened,' what was it you told them?

A. That I did—I was being accused of driver [sic], shoot—and a shooting taking place. And I was there. I told them, yes. At first I told them I wasn't. But I did tell them I was indeed there.

Q. And what did you tell them about being there?

A. That I drove through there. I was taking Wayne there to get drugs and that we—I pulled through there, that a shooting had taken place.

Q. Did you tell them who in fact did the shooting?

A. Yes.

MR. KLOAK [Defense Counsel]: Objection! Leading.

THE COURT: Overruled.

Q. [Prosecutor]: Who [sic] did you tell them?

A. I told them that Wayne shot him."

The out-of-court statement discussed in the colloquy above occurred about 1½ hours after Billy's first statement to the police officers.

Here, we find that the trial court improperly applied the doctrine of completeness in admitting Billy's out-of-court statement. However, the error was not such to merit a reversal in this case.

■ The doctrine of completeness applies to the testimony of a witness. The basis of its application is as follows:

"Furthermore, it is well established that where a conversation is related by a witness, the opposing party has a right to bring out all of the conversation on cross-examination. [Citations.] One cannot introduce a portion of a conversation and then *bar the opposing party* (emphasis added) from bringing out the rest of that conversation. [Citation.] The doctrine of completeness permits a party to introduce the remainder of a conversation or writing in order to explain, qualify, or otherwise shed light on that portion of a statement introduced by an opponent [citation], so as to correctly convey its true meaning to the trier of fact [citation]." *In re W.D.* (1990), 194 Ill. App. 3d 686, 702.

■ In the instant case, the out-of-court statement was made during direct examination of Billy. Second, the two statements could not be considered contemporaneous as there was an approximate two-hour time difference between them. Thus, the doctrine of completeness was inapplicable. Finally, the first two statements did not link defendant to the crime. The third statement identified defendant as

the person who shot Chambers. The first and last statements are independent of each other and, therefore, the later statement is not needed under the doctrine of completeness to help better inform the jury.

In this instance, the doctrine of completeness was not applicable. Thus, we hold that the out-of-court statement by Billy was not admissible pursuant to the doctrine of completeness. Still, the decision of the trial court to admit this evidence was not reversible error.

Generally, a witness may not testify as to his out-of-court statements to corroborate testimony at trial. (*People v. Hayes* (1990), 139 Ill. 2d 89, 138.) "An exception to this rule is recognized where the prior consistent statement is introduced to rebut a charge or inference that the witness is motivated to testify falsely or that his in-court testimony is of recent fabrication." *Hayes*, 139 Ill. 2d at 138.

The record indicates that defense counsel's opening statement alluded to the idea that Billy fabricated his testimony. During a sidebar, defense counsel stated that his cross-examination would be limited to the first two statements given by Billy. He objected to the admission of a third statement. Yet, defense counsel's opening statement referred to the first two statements and implied that the third was a falsehood. Thus, the prior consistent statement was admitted to rebut the inference of a fabrication. We hold that the trial court was correct in admitting this evidence to rebut an inference that Billy's testimony was fabricated.

When inadmissible hearsay is merely cumulative of trial testimony, its admission does not constitute reversible error. (*People v. Griffin* (1988), 175 Ill. App. 3d 111, 118.) Here, Billy's out-of-court statement matched his testimony at trial. Further, he was present for cross-examination and was cross-examined by defense counsel.

Though defendant objected to the admission of Billy's prior consistent statement at trial, the witness was specifically cross-examined as to his third statement implicating defendant. The colloquy between defense counsel and Billy went as follows:

"Q. Now when you made your first two statements to the Markham Police that wasn't the truth was it?

A. No it wasn't.

Q. Now, the third statement is the truth, isn't it?

A. Yes it is.

Q. You got to stick to that truth so you don't get the charges reinstated; isn't that right?"

The rule with respect to cross-examination concerning objectionable testimony is as follows:

"Where defendant objects to the admission of testimony on direct examination but then questions the witness on cross-examination concerning the allegedly inadmissible testimony, any error caused thereby is waived for purposes of appeal." *People v. Lee* (1988), 173 Ill. App. 3d 181, 185.

Since defense counsel cross-examined Billy as to his third statement, any error is now waived for purposes of appeal.

In considering the evidence in a light most favorable to the prosecution (*People v. Young* (1989), 128 Ill. 2d 1, 48-49), this court will uphold the jury verdict of guilty beyond a reasonable doubt. For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.